**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

v.

ENRIQUE IRIZARRY,

*Defendant.*

CRIMINAL ACTION
NO. 21- 202

**Pappert, J.**                                                                                        **October 2, 2023**

### MEMORANDUM

     Enrique Irizarry pleaded guilty to one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). (ECF 64).  Police officers were executing a search warrant for Irizarry when they found him in front of his bedroom and discovered a loaded, semi-automatic pistol under his bed.  (Resp. in Opp. to Mot. to Dism., pp. 4–5, ECF 69).  Irizarry had been convicted of, among other crimes, multiple felonies that trigger § 922(g)(1): three times for possession with intent to distribute, once for carrying a firearm without a license, and once for aggravated assault.  (*Id.*).

     Having been sentenced, Irizarry moves, purportedly pursuant to 28 U.S.C. § 2255, to dismiss his conviction, alleging that § 922(g)(1) is unconstitutional as applied to him.  (ECF 67).  Irizarry's motion is barred by his plea agreement, procedurally defaulted, and meritless.

I

Before pleading guilty to one count of possession of a firearm by a felon, Irizarry entered into a written guilty plea agreement waiving, with limited exceptions that do not apply here, his rights to file an appeal, collateral attack or other motion challenging his conviction or sentence.  (Plea Agreement ¶ 14, ECF 39).  Specifically, the agreement only allowed Irizarry to file a direct appeal or petition for collateral relief to claim that his sentence exceeded the statutory maximum; the court erroneously imposed an upward departure in the guideline calculation; the court imposed an upward variance from the guideline range; or an attorney who represented him provided constitutionally ineffective assistance of counsel.  (*Id.*).

In May 2023, Irizarry was sentenced to 84 months' imprisonment, which fell within the advisory guideline range of 70 to 87 months.  (Presentence Investigation Report ¶ 70).  Two months later, Irizarry filed this motion, which is based upon the Third Circuit's decision *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (*en banc*).

II

An appellate waiver in a plea agreement is enforced if the court concludes "(1) that the issues [petitioner] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice."  *United States v. Damon*, 933 F.3d 269, 272 (3d Cir. 2019) (internal quotation marks omitted).

Irizarry waived his claim in his plea agreement.  His argument does not involve one of the exceptions to his appellate waiver; he did not receive a sentence outside the

sentencing guidelines or statutory maximum and he does not claim ineffective assistance of counsel.  *See* (Plea Agreement ¶ 14).

Irizarry entered into his plea agreement knowingly and voluntarily.  Before accepting a guilty plea, "the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than the promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2).  The colloquy at Irizarry's change of plea hearing confirmed that was the case.  (ECF 41).

Although there "may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver," that is not the case here.  *See United States v. Khattak*, 273, F.3d 557, 562 (3d Cir. 2001).  The Third Circuit has endorsed the view that courts should evaluate appellate waivers on a case-by-case basis and consider the "clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." *Id.* at 563 (quoting *United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001)).  None of those factors are implicated in Irizarry's case because, as explained below, he fails to identify any error in applying § 922(g)(1).  *See infra* Section IV.

III

Irizarry did not raise his claim in the district court or on direct appeal.  A claim that is procedurally defaulted, "may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'"

*Bousley v. United States*, 523, U.S. 614, 622 (1998) (internal quotation marks omitted). Cause "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). And actual innocence requires a showing that "in light of all the evidence, it is more likely than not that no reasonable juror properly instructed on the intervening interpretation would have convicted him." But Irizarry does not allege either condition exists.

IV

Irizarry's claim also fails on the merits. In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the United States Supreme Court established a history-based framework for deciding whether a firearm regulation is constitutional under the Second Amendment. 142 S. Ct. at 2127. Under *Bruen*, courts must first determine whether the text of the Second Amendment applies to a person and his proposed course of conduct and, if it does, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen* at 2127, 2134–35.

In *Range v. Attorney General*, the Third Circuit Court of Appeals considered a civil action brought by Bryan Range, who sought a declaration that 18 U.S.C. § 922(g)(1) violated the Second Amendment as applied to him and an injunction prohibiting the law's enforcement against him. 69 F. 4th 96, 98–99 (2023). Range previously pleaded guilty to one count of making a false statement to obtain food stamps, in violation of 62 Pa. Cons. Stat. § 481(a), a conviction that was then classified

as a misdemeanor punishable by up to five years' imprisonment, which under § 922(g)(1) precluded Range from possessing a firearm.  *Id.* at 98.

The District Court had granted summary judgment in favor of the Government. *Range v. Lombardo*, 557 F. Supp. 3d 609 (E.D. Pa. 2021).  While Range's appeal was pending, the Supreme Court decided *Bruen*.  A Third Circuit panel affirmed the District Court's judgment under the *Bruen* framework.  *Range v. Attorney General*, 53 F.4th 262 (3d Cir. 2022) (*per curiam*), *rev'd en banc*, 69 F.4th 96 (2023).  The Third Circuit then granted Range's petition for rehearing *en banc* and reversed the panel's decision, holding that the Government had "not shown that the Nation's historical tradition of firearm regulation supports depriving Range of his Second Amendment right to possess a firearm."  *Range*, 69 F.4th at 106.

*Range*'s holding was narrow and limited to the facts of that case, particularly the nature of Bryan Range's previous conviction.  *Range* at 106.  The Circuit's decision did not purport to vitiate § 922(g)(1) or limit Congress' ability to disarm those "who pose a threat to the orderly functioning of society."  *Range* at 110 (Ambro, J., concurring).  Our Republic has a longstanding history and tradition of depriving people with criminal histories like Irizarry from possessing firearms.

B

Irizarry, like Range, is "one of the people" protected by the Second Amendment despite his prior felony convictions.  *See Range*, 69 F.4th at 101.  The Third Circuit held that "the people" in the Second Amendment's text refers to all Americans and not only

law-abiding persons. *Id.* And the Government does not contend otherwise. (Resp. in Opp. to Mot. to Dism., p. 14).

The next question is whether the text of the Second Amendment applies to Irizarry's "proposed conduct." *Bruen*, 142 S. Ct. at 2134–35. If it does, the Government bears the burden to prove that its firearms regulation is "consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. The Government contends that the Second Amendment does not apply to Irizarry's conduct because he does not maintain he possessed a firearm for a lawful purpose, and the Second Amendment does not protect his possession of a firearm while on probation. (Resp. in Opp. to Mot. to Dism., pp. 14–15, 17). The Court need not address whether the Second Amendment covers Irizarry's conduct—even if it does, the Government has met its burden to show that 18 U.S.C. § 922(g)(1) as applied to Irizarry is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

"Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*.'" *Range*, 69 F.4th at 103 (quoting *Bruen* at 2133). "Regulations targeting longstanding problems must be 'distinctly similar' to a historical analogue, but 'modern regulations that were unimaginable at the founding' need only be 'relevantly similar' to one." *Id.* The question is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Bruen* at 2133.

The Government cites to *District of Columbia v. Heller*, in which the Supreme Court noted that "nothing in our opinion should be taken to cast doubt on the

longstanding prohibitions on the possession of firearms by felons."  554 U.S. 570, 626 (2008).  The Government also relies on two concurring opinions in *Bruen,* reaffirming the Supreme Court's statements in *Heller* that felon dispossession statutes are longstanding and presumptively lawful.  *See Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) (noting that the decision does not "disturb[ ] anything that [the Court] said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns"); *see also id.* at 2162 (Kavanaugh, J., concurring) (emphasizing that "the Second Amendment allows a 'variety' of gun regulations," and *Bruen* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons" (citation omitted)).

C

Firearm regulation in the era of the Second Amendment's ratification disarmed individuals who "posed a potential danger" to others.  *Range*, 69 F.4th at 109-110 (Ambro, J., concurring).  For example, during the American Revolution, Pennsylvania and Massachusetts disarmed British loyalists who refused to swear allegiance to the state or the United States to "eliminate[ ] the opportunity for [them] to violently protest the actions of the [state] government.'"  Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early Origins of Gun Control*, 73 Fordham L. Rev. 487, 506–07 (2004), *quoted in Folajtar v. Attorney General*, 980, F.3d at 915 (3d Cir. 2020) (Bibas, J., dissenting).

The understanding that dangerous individuals could be disarmed persisted after ratification.  In some states during the mid-19th century, if individuals were "reasonably accused of intending to injure another or breach the peace," they could be

subject to firearm restrictions that did not apply to others. *Bruen*, 142 S.Ct. at 2148–2149 (2022).

Irizarry's prior convictions involve acts of violence, drug trafficking, and firearms. Those convictions indicate that he presents a potential danger to society and falls into the historical group of people who "may be disarmed if convicted of making an improper or dangerous use of weapons." *Bruen*, 142 S. Ct. at 2152. Range, by contrast, had pleaded guilty to a misdemeanor of making a false statement to obtain food stamps, and had a criminal history otherwise limited to traffic tickets and fishing without a license. *Range* at 98.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.